CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 18, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

Lee Purnhagen, *Parent and Guardian, On Behalf of Mason Purnhagen*,

Plaintiff,

v.

Harrisonburg City School Board,

Defendant.

Civil Action No. 5:25-cv-00083

**MEMORANDUM OPINION**

Plaintiff Lee Purnhagen, on behalf of her child Mason Purnhagen, seeks to overturn the outcome of a state administrative hearing initiated under the Individuals with Disabilities Education Act ("IDEA"). She also seeks attorneys' fees as the prevailing party. This matter is before the court on Defendant Harrisonburg City School Board's motion to dismiss, (Dkt. 9), which the court has converted into a motion for judgment on the administrative record. (Dkt. 27.) For the following reasons, the court will grant Defendant's motion.

## I. Background

### A. Legal Framework

Under the IDEA, all states receiving federal funds for education must provide disabled schoolchildren with a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188–89 (1982)

(cleaned up). The "primary vehicle" by which schools provide a FAPE to eligible children is through an Individualized Education Program ("IEP"). *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017). To develop an IEP, a team including teachers, school officials, and the child's parents meet according to certain procedures. 20 U.S.C. § 1414(d)(1)(B). An IEP must include a description of the child's present academic performance, how their disabilities affect that performance, what measurable annual goals should be included for their academic achievement, and how the school will provide special education to the child so that they achieve the academic goals. *Id.* § 1414(d)(1)(A).

If parents and school officials disagree about the contents of an IEP, they have an opportunity to engage in an informal meeting or mediation. *Id.* §§ 1415(e), (f)(1)(B)(i). If that fails, the parties may proceed to a "due process hearing" before a state administrative hearing officer. *Id.* §§ 1415(f)(1)(A), (f)(3)(A). As a part of that proceeding, a "local educational agency"—that is, a school district—must provide "prior written notice" to the parents that explains why the school district "proposes or refuses to take the action" requested by the parents. *Id.* §§ 1415(b)(3), (c)(1)(B), (f)(1)(A). After a final decision from the due process hearing, either party has the right to bring a civil action in state or federal court "with respect to the complaint presented." *Id.* § 1415(i)(2)(A). In such an action, a federal court must receive the administrative record, hear any additional evidence requested by the parties, and grant "such relief as the court determines is appropriate" based on a preponderance of the evidence. *Id.* § 1415(i)(2)(C).

**B. Factual History**[1]

Mason Purnhagen ("Mason")[2] receives special education services through Harrisonburg City Public Schools ("HCPS"), as a child with a disability under IDEA. (Compl. ¶ 2 (Dkt. 1).) He was enrolled in HCPS during the 2024–25 school year. (*Id.* ¶ 1.) Mason "struggles with inattentiveness, distractibility, and impulsivity, which directly impacts his behavior, self-regulation, and executive dysfunction." (*Id.* ¶ 3.) After Mason's IEP team determined that he needed a private residential placement to achieve a FAPE, (*id.* ¶ 4; Pl.'s Resp. at 2 (Dkt. 15)), Mason began attending Liberty Point Academy through Liberty Point Behavioral Healthcare in August 2023. (Compl. ¶ 5.) Liberty Point does not allow students to remain when they turn eighteen years old, so Mason faced loss of his placement when he turned eighteen on May 28, 2025. (*Id.* ¶ 6.) Mason's IEP team "did not have a placement for him after his discharge from Liberty Point." (*Id.* ¶ 8.)

As of January 13, 2025, Mason's IEP stated that his "Projected Graduation/Exit Date" from Liberty Point was "2026." (Compl. ¶¶ 9–12.) But on March 9, 2025, HCPS circulated a draft IEP with proposed changes, including a new graduation date of 2025. (*Id.* ¶ 13.) The proposed IEP also listed Mason as a candidate for both a "standard" and "applied studies" diploma.[3] (*Id.* ¶¶ 14–15.) According to Plaintiff, this "abrupt change" contradicted the prior

---

[1] The following facts are taken from the administrative record, although facts from Plaintiff's complaint are provided as background. While the administrative record was filed under seal at Dkt. 28, many of the documents comprising the administrative record were docketed by Plaintiff as exhibits to her complaint, which were not sealed. (*See* Dkts. 1-1–1-10.) When a document appears both in the administrative record and as an attachment to Plaintiff's complaint, the court cites the latter.

[2] Because Mason Purnhagen turned eighteen before Plaintiff filed the present complaint—and because the complaint's caption lists his full name—the court will refer to Mason using his unabbreviated name without initials.

[3] The Hearing Officer's decision defines these terms. "The standard diploma track is appropriate for students who may wish to attend a four-year college or university, and also for students who may wish to attend a community college." (Hearing Officer's Decision ¶ 9 (Dkt. 1-3).) "An applied studies diploma or certificate of attendance is available for

IEP and "threatened to cut short Mason's entitlement to services." (Pl.'s Resp. at 2.) Mason's mother, Lee Purnhagen ("Lee"), "did not agree with these changes," (Compl. ¶ 17), believing that the school district was "attempt[ing] to accelerate Mason's exit from school." (Pl.'s Resp. at 2.)

On March 14, 2025, Lee filed a request for a due process hearing with the Virginia Department of Education. (*Id.*; *see generally* Dkt. 1-2.) Lee alleged, among other things, that HCPS failed to provide "an appropriate transition plan" for Mason and that HCPS was attempting to graduate Mason when he turned eighteen despite his eligibility for services until he was twenty-two. (Dkt. 1-2 at 3 (contending that HCPS "is choosing to graduate him when he turns 18 years old so they will not be responsible for his alternative placement").) As relief, Lee sought an alternative educational placement at public expense. (*Id.*) Lee noted that Whitney Academy, an institution in Massachusetts, had accepted Mason and would provide for him until he turned twenty-two years old. Lee also requested that HCPS "cover[] the tuition for Whitney Academy and her legal expenses as this entire process would not have been required without [HCPS's] failures." (*Id.*)

A hearing officer was appointed on March 24, 2025, and held a prehearing conference on March 27. (Dkt. 1-6 at 2; Compl. ¶ 18.) The Hearing Officer's "First Prehearing Report and Order" outlined the following four issues for decision:

1) Whether the Student has been provided with an appropriate transition plan;

---

students who do not meet the requirements for the standard diploma." (*Id.* ¶ 10.) "The applied studies diploma does not allow a student to earn a college degree." (*Id.*)

2) Whether graduation in the school year 2024-2025 on the standard diploma track is an appropriate goal;

3) Whether continued private residential placement is required in order to provide Student with a free, appropriate, public education ("FAPE"); and

4) Whether the Student has been denied FAPE and is entitled to compensatory education services?

(Dkt. 1-6 at 1.) An informal meeting on April 7, 2025 did not resolve the dispute, and the case proceeded to a hearing. (Compl. ¶¶ 20–21; Hearing Officer's Decision at 2 (Dkt. 1-3).)

The hearing took place over four days on May 2, 5, 7, and 9, 2025. (Dkt. 1-3 at 2.) On May 6, after two days of testimony, HCPS moved to amend its prior written notice and the wording of Issues 2 and 3. (Dkt. 1-8.) HCPS explained that due to Mason's failing grades, HCPS no longer believed that Mason "can or will graduate in May 2025." (*Id.* ¶ 2.) Thus, as to Issue 2, HCPS asked that the phrase "in the school year 2024–2025" be struck, leaving Issue 2 to examine only whether the standard diploma track was an appropriate goal. (*Id.* ¶ 4.) Plaintiff opposed, stating that it would be prejudicial to amend the issues after the hearing had begun. (Dkt. 28-17 at 1–3.) On May 21, 2025, the Hearing Officer denied HCPS's motion to amend as untimely. (Dkt. 1-10 at 2–3.) However, the Hearing Officer noted that HCPS's contention that Lee Purnhagen "will receive at least part of the relief requested in Issue 2"—that is, that Mason would not graduate in 2025—may be considered in her final decision. (*Id.* at 2.)

On May 27, 2025, the Hearing Officer issued her decision. (Dkt. 1-3.) As to Issue 2,[4] the Hearing Officer wrote that the issue "encompasses two questions: whether Student should graduate in the school year 2024–2025, and whether the standard diploma track is an appropriate goal for him." (*Id.* at 11.) The Hearing Officer found the first question—whether graduation in 2025 was an "appropriate goal"—to be moot, as "the parties have now agreed that graduation in . . . [2025] is not appropriate, primarily because Student has failed to complete the majority of assignments in the most recent semester." (*Id.* at 11–12 (citing Dkt. 28-20 750:9-12).) The Hearing Officer also noted that "the projected graduation year is still subject to change, depending on Student's progress." (*Id.* at 12.) On Issue 2's second question, the Hearing Officer found that Plaintiff did not show by a preponderance of the evidence that the standard diploma track is inappropriate for Mason. (*Id.*) The Hearing Officer held that HCPS was the prevailing party. (*Id.* at 16.)

**C. Procedural History**

Plaintiff filed the present complaint on August 25, 2025. (Dkt. 1.) In it, Plaintiff does not challenge the Hearing Officer's determination on Issues 1, 3 or 4. Instead, Plaintiff seeks to overturn the Hearing Officer's ruling on Issue 2. As relief, the complaint requests that the court "[o]verturn the Hearing Officer Decision regarding Issue 2 and find in favor of Plaintiff[] as the prevailing party"; award Plaintiff costs incurred in the administrative proceedings and

[4] Because Plaintiff only challenges the Hearing Officer's decision on Issue 2, the court will not recount the Hearing Officer's decisions on Issues 1, 3, and 4 in detail. (Dkt. 1-3 at 10–16.) Broadly speaking, the Hearing Officer respectively determined that Mason had been provided with an appropriate transition plan; directed the parties to collaborate to locate a residential placement for Mason; and that Mason had not been denied a FAPE, though an award of compensatory education may be appropriate in the future. (*Id.*)

in this suit; and "for such other and further relief as this Court may deem just and proper." (*Id.* at 10–11.)

HCPS moved to dismiss under Rule 12(b)(6) shortly thereafter. (Dkt. 9.) On January 28, 2026, the court proposed converting Defendant's motion to dismiss into one for judgment on the administrative record. (Dkt. 27.) The parties jointly consented on February 11, 2026. (Dkt. 29.) The parties docketed the administrative record under seal on the same day. (Dkt. 28.)

## II. Standard of Review

"Although IDEA cases are original civil actions, they are adjudicated based upon the record developed in the administrative proceedings." *C.D. v. Arlington Cnty. Sch. Bd.*, No. 1:23-cv-1627, 2025 WL 350222, at *6 (E.D. Va. Jan. 30, 2025) (citing *Cnty. Sch. Bd. of Henrico Cnty. v. Z.P. ex rel.* R.R., 399 F.3d 298, 309 n.7 (4th Cir. 2005)), *aff'd*, 2026 WL 579466 (4th Cir. Mar. 2, 2026). A district court examining a hearing officer's decision under the IDEA "is obliged to conduct a modified de novo review, giving due weight to the underlying administrative proceedings." *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 530–31 (4th Cir. 2002) (cleaned up). "To afford 'due weight,' [courts] treat the state hearing officer's factual findings and credibility determinations as '*prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding,' so long as the findings were 'regularly made.'" *G.M. by E.P. v. Barnes*, 114 F.4th 323, 334 (4th Cir. 2024) (quoting *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)). Courts give this level of deference to the hearing officer's factual findings because the hearing officer had "the opportunity to hear the

testimony and assess the weight and credibility of the witnesses." *C.D.*, 2025 WL 350222, at *7 (citing *Doyle*, 953 F.2d at 104–05). Still, "the district court must still make its own independent determination regarding the legal conclusions that have been drawn by the administrative officer." *S.S. v. Bd. of Educ. of Harford Cnty.*, 498 F. Supp. 3d 761, 776 (D. Md. 2020) (citing *Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. TH*, 642 F.3d 478, 485 (4th Cir. 2011)).

While district courts are limited to the records of the state administrative proceedings, "a district court does not simply affirm, reverse, or vacate the decision of the state administrative agency." *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 384 (4th Cir. 2000). Instead, an IDEA action in federal district court is an independent action, and a "remedy . . . imposed by the district court itself as an enforceable order." *Id.* "Federal district courts are authorized to award a broad range of remedies and to 'grant such relief as the court determines is appropriate' when a school has denied a student a FAPE." *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 840 (4th Cir. 2021). In IDEA proceedings, "the party challenging the ALJ's decision bears the burden of showing that the decision was erroneous." *G.M. v. Martirano*, No. CV JKB-20-0791, 2021 WL 409856, at *5 (D. Md. Feb. 5, 2021) (quoting *Spielberg v. Henrico Cnty. Pub. Sch.*, 853 F.2d 256, 258 (4th Cir. 1988)), *aff'd sub nom. Barnes*, 114 F.4th 323 (4th Cir. 2024).

## III. Analysis

### A. The court will not overturn the Hearing Officer's decision regarding Issue 2.

In her first request for relief, Plaintiff requests that this court enter a judgment that "[o]verturn[s] the Hearing Officer Decision regarding Issue 2." (Dkt. 1 at 10.) The court will

decline to do so  several reasons. Most fundamentally, the court lacks jurisdiction to "overturn" or reverse the Hearing Officer's decision. "The limited, original jurisdiction of federal district courts in IDEA cases does not extend to appellate review of state administrative IDEA complaints." *Johnson*, 20 F.4th at 845. To reiterate, this court's role is not to "simply affirm, reverse, or vacate the decision of the state administrative agency" but to "offer[] its own independent *de novo* review and conclusion." *Kirkpatrick*, 216 F.3d at 384; *see also Miller v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 64 F.4th 569, 574 (4th Cir. 2023) (listing forms of relief such as "annulling" a hearing officer's decision and "remanding" the matter as examples of "forms of relief . . . a district court may not order") (cleaned up).

But even assuming this court could grant the requested relief to Plaintiff, none of Plaintiff's objections to the Hearing Officer's decision are availing. First, Plaintiff claims that the hearing officer "erred in dividing [Issue 2] into two questions." (Compl. ¶ 37.) "By rewriting the issue," Plaintiff contends, "the Hearing Officer exceeded her authority under the IDEA and deprived Plaintiffs of a full and fair determination." (Pl.'s Resp. at 3.) But Plaintiff provides no authority suggesting that dividing the question into two subparts "effectively amend[ed]" the issue. (Compl. ¶ 43.) As Defendant notes, Plaintiff "fail[s] to explain why an issue cannot be divided into subsidiary questions." (Dkt. 17 at 8.) And while Plaintiff cites several cases for the proposition that a "hearing officer does not have the discretion or authority to unilaterally amend or raise issues," (*see* Compl. ¶ 39 (collecting cases)), Plaintiff's cited authorities address an entirely different situation: where a Hearing Officer *adds* an issue *sua sponte* for decision, of which the parties lacked adequate notice. *Fairfax Cnty. Sch. Bd. v.*

*A.G.*, No. 1:21-cv-840, 2022 WL 4016882, at *5 (E.D. Va. Sept. 2, 2022) (noting that "where an issue 'was not raised in the due process complaint, was not identified as an issue during the pre-hearing conference, nor was it mentioned in the pre-hearing order,' the issue could not be raised *sua sponte* by the hearing officer following the due process hearing in the hearing officer's determination." (cleaned up)). Unlike in these cases, here, both subparts of Issue 2 had been raised in the complaint and discussed in the prehearing order.[5] (Dkt. 1-6 at 1.)

Second, Plaintiff contends that the Hearing Officer wrongly determined that the first subpart of Issue 2—whether a 2025 graduation for Mason was appropriate—was moot.[6] (Compl. ¶ 61.) Mootness occurs "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)). Mootness can occur "when the facts or law underlying the case change, including 'when the claimant receives the relief he or she sought to obtain through the claim.'" *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 835 (E.D. Va. 2022) (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011)).

[5] Plaintiff also argues that the Hearing Officer's "denial of [Defendant's] motion" to amend the prior written notice to remove mention of the 2025 graduation date in Issue 2 "directly contradicts" her decision to divide Issue 2 into two subparts. (Pl.'s Resp. at 9.) The court sees no "contradict[ion]" in the Hearing Officer's action. Plaintiff offers no explanation for how the Hearing Officer's denial of Defendant's motion to amend as untimely bound her from dividing Issue 2 into two subparts.

[6] The court acknowledges some confusion about whether Article III mootness applies to this case. Mootness is a doctrine that stems from the United States Constitution, while IDEA due process proceedings are state actions proceeding under state law. 8 Va. Admin. Code § 20-81-210. Moreover, when the state Hearing Officer found that the first subpart of Issue 2 was "moot," she did not explicitly cite Article III mootness. (Hearing Officer's Decision at 12). Nonetheless, because the parties briefed the issue under the framework of Article III mootness, the court uses that framework as well. Caselaw also suggests that hearing officers may issue decisions on Article III mootness grounds. *Morris v. D.C.*, 38 F. Supp. 3d 57, 66 n.3 (D.D.C. 2014) ("Although the hearing officer is not in fact an Article III judge, she was able to issue a decision on mootness grounds."); *see also Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 833 (D.C. Cir. 2006); *Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 841 (4th Cir. 2021) (describing a state hearing officer which held that a plaintiff's claims were moot).

The court reviews a hearing officer's conclusion of law *de novo*. *C.D.* 2025 WL 350222, at *6 (citing *Alexis v. Bd. of Educ. for Baltimore Cnty. Pub. Schs.*, 286 F. Supp. 2d 551, 556 (D. Md. 2003)). The court finds that the Hearing Officer was correct in concluding that the issue of Mason's graduation date was moot.[7] Due to Mason's failing grades during the school year, it was impossible for Mason to graduate in 2025, as both parties acknowledged. (Dkt. 1-8 at 1 ("HCPS does not maintain that the Student can or will graduate in May 2025."); Dkt. 28-18 at 6 (Plaintiff's post-trial brief arguing that "M.P. will not graduate in the 2024-2025 school year according to his current IEP and academic performance." (cleaned up)).) This was the precise relief that Plaintiff sought. (Day One Tr. 14:16–18 ("For the relief that's being requested—I'll try to boil it down. Where are we? Number one, MP should not be graduating.").) Because Mason "receive[d] the relief he . . . sought to obtain through the claim," *Simmons*, 634 F.3d at 763, the Hearing Officer correctly found that the issue of Mason's graduation was "no longer 'live.'" *Already*, 568 U.S. at 91.

In response, Plaintiff contends that the "voluntary cessation" doctrine applies. (Pl.'s Resp. at 4.) Under this exception to the mootness doctrine, if a defendant stops its challenged conduct after it has been sued but before the court can render a decision, the court may find that a matter is not moot. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). But here, it is Mason's—not HCPS's—conduct that made his 2025

[7] To be clear, the court does not find that *this* federal action is moot. "The IDEA allows parties to bring an independent action in federal court solely to recover fees incurred in an administrative proceeding." *Combs by Combs v. Sch. Bd. of Rockingham Cnty.*, 15 F.3d 357, 359 n.10 (4th Cir. 1994); *see also Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 366 (5th Cir. 2018) (finding that an action to recover attorney's fees was not moot, even when the underlying IDEA issue was).

graduation impossible. The voluntary cessation exception has no applicability when the plaintiff's own conduct provides the relief he seeks. *Gulden v. Exxon Mobil Corp.*, 119 F.4th 299, 309 (3d Cir. 2024) ("That voluntary change of conduct by plaintiffs—not the defendant—does not satisfy the voluntary cessation exception.").

Additionally, the issue of graduation in 2025 was "moot" in a non-Article III sense. Once both parties agreed that it was impossible for Mason to graduate in 2025, this issue could no longer have any impact on Mason's FAPE. But IDEA hearing officers are limited to determining whether a student is receiving or will receive a FAPE. *N.C. by J.C. v. Bd. of Educ. of Baltimore Cnty.*, No. 1:24-cv-00367, 2024 WL 5202241, at *4 (D. Md. Dec. 23, 2024) ("Any decision of the officer granting substantive relief must be 'based on a determination of whether the child received a [FAPE].'" (quoting § 1415(f)(3)(E)(i))); *Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1055 (7th Cir. 1997) ("The IDEA concerns itself not with labels, but with whether a student is receiving a free and appropriate education."). Here, the Hearing Officer was justified in not opining on whether a 2025 graduation date—which both parties agreed would not and could not happen—was an "appropriate goal," as any answer to such a moot question could not be relevant to "whether the child received [or would receive] a free appropriate public education." § 1415(f)(3)(E)(i).[8]

[8] The court also notes that HCPS only *proposed* the 2025 graduation date in a draft IEP, which was subject to revision after a meeting between HCPS and Plaintiff. (Dkt. 1-5 555:20–558:15.) Plaintiff subsequently cancelled that meeting. (*Id.* 558:13-15.) At all times, Mason's operative IEP contained a proposed graduation date of 2026. (*Id.* 648:2-12; 652:2-6.) The fact that the proposed 2025 graduation date was never finalized into an operative IEP buttresses the court's conclusion that the Hearing Officer correctly declined to reach this question.

Even if this court could grant Plaintiff's requested relief and even if this issue were not moot, Plaintiff did not meet her burden on the merits. Giving due weight to the state administrative record and proceedings, the court finds Plaintiff has not shown by a preponderance of the evidence that a 2025 graduation was an inappropriate goal. To start, HCPS proposed a 2025 graduation date only because Mason switched to semester-long courses to earn more credits. (Dkt. 1-3 ¶¶ 20–21 ("In approximately January of 2025, Student's projected graduation date was changed to 2025 on a new draft of his IEP. *This change resulted from* Student's switching to semester-long courses from year-long courses, to potentially earn more credits." (emphasis added) (cleaned up)).) In other words, HCPS proposed a goal for Mason to graduate in 2025 because his own actions put him on track to do so. In conjunction with the fact that "[Mason's] report card for the entirety of the prior year reflects all passing grades in the classes," (Hearing Officer's Decision at 12), the court cannot find by a preponderance of the evidence that HCPS's goal was inappropriate. (*See also id.* at 15 ("All evidence indicates that, until recently, under the operative IEP, Student was academically successful and making appropriate progress in school.").) The court agrees with HCPS that Plaintiff's argument to contrary—that a 2025 graduation was not appropriate because Mason's failing grades did not allow him to graduate—"conflates the likelihood of graduation with whether graduation is an appropriate *goal*," or "end toward which effort is directed." (Def.'s Br. at 9–10 (cleaned up).)[9]

---

[9] Plaintiff also argues that "the District knew or should have reasonably known by March 2025 that a projected graduation date of 2025 on the standard diploma track was not an appropriate goal at the time the draft IEP amendment was proposed." (Pl.'s Resp. at 7.) As support, Plaintiff cites the fact that "[t]he District was aware the Student would be removed from his residential placement after he turned 18-years-old in May 2025." (*Id.*) But as the Hearing Officer noted,

Finally, Plaintiff's request to overturn the ruling on Issue 2 focused solely on whether the Hearing Officer 1) erred in dividing Issue 2 into two questions and 2) erred in finding the issue of Mason's graduation date to be moot. (Compl. ¶ 37 ("The Decision should be reversed as to 'Issue 2' because the Hearing Officer erred in dividing the issue into two questions and determining one of the questions as moot when the question was not formally resolved by HCPS at the time of the decision.").) Nowhere does Plaintiff argue that the Hearing Officer erred in ruling on the second sub-question of Issue 2: whether graduation on the standard diploma track was an appropriate goal. Therefore, the court need not review the Hearing Officer's decision on this second sub-question.

For these reasons, the court will not "overturn" the Hearing Officer or find that the Hearing Officer's decision on Issue 2 was erroneous.

**B. The court will not find in favor of Plaintiff as the prevailing party or award costs of suit.**

Next, Plaintiff requests that the court "find in favor of Plaintiffs as the prevailing party." (Dkt. 1 at 10.) "In order to be a prevailing party under [IDEA], a 'plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.'" *Lambeau v. Arlington Cnty. Sch. Bd.*, 114 F.3d 1176, 1997 WL 282153, at *1 (4th Cir. 1997) (*quoting Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). "The touchstone of the prevailing party inquiry" is whether there was a "material alteration of

HCPS's obligation "at that point [would] become[] to find a substantially similar placement for [Mason,]" or else Mason "would be entitled to compensatory education for those school days starting on May 28, 2025, and ending on the last day of school, June 6, 2025." (Hearing Officer's Decision at 13.) In other words, Plaintiff has not shown that Mason aging out of his current institution, Liberty Point, necessarily required HCPS to change its projected graduation date, nor that these circumstances in and of themselves rendered a 2025 graduation from HCPS inappropriate.

the legal relationship of the parties." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

Applying these principles, Plaintiff is not a prevailing party on Issue 2. Plaintiff did not "obtain an enforceable judgment against the defendant" on this Issue. *Lambeau*, 1997 WL 282153, at *1. The Hearing Officer declined to reach it and found Issue 2 to be moot. This falls far short of showing a "material alteration of the legal relationship of the parties" necessary for Plaintiff to be a prevailing party. *Texas State Tchrs. Ass'n*, 489 U.S. at 792–93.

While Plaintiff seemingly concedes that there was no "enforceable judgment" in this case, (*see* Pl.'s Resp. at 6), Plaintiff argues that "[t]he Fourth Circuit relies on the 'catalyst theory,'" under which "a plaintiff may be a prevailing party entitled to attorney's fees 'if he can show that the process was a material contributing factor in bringing about extrajudicial relief.'" (Pl.'s Resp. at 10 (quoting *Combs by Combs v. Sch. Bd. of Rockingham Cnty.*, 15 F.3d 357, 360 (4th Cir. 1994)).) Applying this standard, Plaintiff appears to argue that her due process complaint caused HCPS to conclude that Mason could not graduate in 2025—and that she is thus a prevailing party. (*See id.* at 7–8.)

This is not the standard in the Fourth Circuit. "[T]he Fourth Circuit sitting en banc rejected the 'catalyst' theory of causation in determining prevailing party status" for IDEA cases. *Moncrieffe-Taylor v. Vance*, 945 F. Supp. 106, 109 (D. Md. 1996) (citing *S–1 and S–2 By and Through P–1 and P–2 v. State Board of Educ. of N. Carolina*, 21 F.3d 49, 51 (4th Cir. 1994)); *Lambeau*, 1997 WL 282153, at *1 ("In *S-1 and S-2 v. State Board of Education,* this court rejected the idea that a party can establish it is a prevailing party because the lawsuit operated as a

catalyst to change the other party's behavior."). Plaintiff cannot be a prevailing party on the catalyst theory. And regardless, the record does not suggest that HCPS changed its behavior because of the due process proceeding. To the contrary, the evidence suggests that Mason's decline in academic performance—and not Plaintiff's due process complaint—was the impetus for HCPS's determination that Mason would not graduate in 2025. (Dkt. 1-8 ¶ 2 (in which HCPS stated "[t]he fact that [Mason] would not achieve passing grades this semester was not apparent at the time the complaint was filed. As a result, HCPS . . . does not maintain that [Mason] can or will graduate in May 2025.").)

Because Plaintiff has shown no "material alteration of the legal relationship of the parties," *Texas State Tchrs. Ass'n*, 489 U.S. at 792–93, the court finds that Plaintiff was not the prevailing party on Issue 2.[10] For this reason, the court will not award Plaintiff costs of the suit. "As under other fee-shifting provisions in the civil rights area, only 'prevailing parties' are entitled to an award of attorney's fees." *Bd. of Educ. of Harford Cnty. v. Thomas*, 36 F. Supp. 2d 256, 260 (D. Md. 1999), *aff'd*, 205 F.3d 1332 (4th Cir. 2000).

[10] Plaintiff does not argue—and thus the court need not determine—that she was the prevailing party on any other issue heard by the Hearing Officer. But the court acknowledges that "a party need not prevail on every issue or even the most 'central' issue in a proceeding to be considered a 'prevailing party,'" and that "obtaining judicially sanctioned and enforceable final relief on some claims is sufficient." *J.D. ex rel. Davis v. Kanawha Cnty. Bd. of Educ.*, 571 F.3d 381, 387 (4th Cir. 2009) (cleaned up). In other words, if Plaintiff prevailed on another issue besides Issue 2, she may be a prevailing party. *See G. ex rel. Ssgt RG v. Fort Bragg Dependent Schs.*, 324 F.3d 240, 255 (4th Cir. 2003), *opinion amended on reh'g*, 343 F.3d 295 (4th Cir. 2003). But Plaintiff does not brief or argue that she received "judicially sanctioned and enforceable final relief" on Issue 1, 3, or 4, either. *Id.* Plaintiff's complaint and briefing focused solely on whether Plaintiff was a prevailing party vis-à-vis Issue 2. (*See* Compl. at 10 (requesting that this court "[o]verturn the Hearing Officer Decision regarding Issue 2 and find in favor of Plaintiffs as the prevailing party"); Pl.'s Resp. at 6–8.) Thus, the court did not review whether the Hearing Officer's decision contained an "enforceable judgment" on Issue 1, 3, or 4 that materially altered the parties' legal relationship.

## IV. Conclusion

For these reasons, the court will grant Defendant's motion for judgment on the administrative record.

An appropriate Order will issue.

**ENTERED** this 18th day of September, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE